UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MARGARITA DELGADO,                          Case No. 3:12-cv-00419-HA

       Plaintiff,

                                 OPINION AND ORDER

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

---

HAGGERTY, District Judge:

       Plaintiff Margarita Delgado seeks judicial review of a final decision by the Commissioner

of the Social Security Administration denying her application for Supplemental Security Income

(SSI).[1] This court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §

405(g). For the following reasons, the Commissioner's decision must be reversed and remanded

for an award of benefits.

## STANDARDS

       A claimant is considered "disabled" under the Social Security Act if: (1) he or she is

unable to engage in any substantial gainful activity (SGA) "by reason of any medically

---

[1] Plaintiff also mentions claims for Disability Insurance Benefits and Disabled Widow's
Benefits in the first paragraph of her Opening Brief, but this appears to be an error.

OPINION AND ORDER - 1

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months," and

(2) the impairment is "of such severity that he is not only unable to do his previous work but

cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." *Hill v. Astrue*, 688 F.3d 1144,

1149-50 (9th Cir. 2012) (citing 42 U.S.C. § 1382c(a)(3); *Tackett v. Apfel*, 180 F.3d 1094, 1098

(9th Cir. 1999)); 42 U.S.C. § 423(d)(1)(A).

     The Commissioner has established a five-step sequential evaluation process for

determining if a person is eligible for benefits.  20 C.F.R. §§ 404.1520(a), 416.920(a).  In steps

one through four, the Commissioner must determine whether the claimant: (1) has not engaged in

SGA since his or her alleged disability onset date; (2) suffers from severe physical or mental

impairments; (3) has severe impairments that meet or medically equal any of the listed

impairments that automatically qualify as disabilities under the Social Security Act; and (4) has a

residual functional capacity (RFC) that prevents the claimant from performing his or her past

relevant work.  *Id.*  An RFC is the most an individual can do in a work setting despite the total

limiting effects of all his or her impairments.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), and

Social Security Ruling (SSR) 96-8p.  The claimant bears the burden of proof in the first four

steps to establish his or her disability.

     At the fifth step, however, the burden shifts to the Commissioner to show that jobs exist

in a significant number in the national economy that the claimant can perform given his or her

RFC, age, education, and work experience.  *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of

OPINION AND ORDER - 2

awarding benefits. 20 C.F.R. §§ 404.1520(f)(1), 416.920(a). On the other hand, if the Commissioner can meet its burden, the claimant is deemed to be not disabled for purposes of determining benefits eligibility. *Id.*

The Commissioner's decision must be affirmed if it is based on the proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett*, 180 F.3d at 1097; *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted).

When reviewing the decision, the court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098. The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances where the evidence supports either outcome. *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998). If, however, the Commissioner did not apply the proper legal standards in weighing the evidence and making the decision, the decision must be set aside. *Id.* at 720.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff was born on September 6, 1970. She completed high school, and has some college education. She was previously employed as a retail stock clerk.

Plaintiff applied for SSI on August 9, 2009 alleging a disability onset date of August 23, 2007. Her application was denied initially and upon reconsideration. At plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on June 3, 2011. The ALJ heard testimony

OPINION AND ORDER - 3

from plaintiff, who was represented by counsel, as well as an independent medical expert and an

independent vocational expert (VE).

On June 10, 2011, the ALJ issued a decision denying plaintiff's application for benefits.

At step one of the sequential analysis, the ALJ found that plaintiff had not engaged in SGA since

her alleged disability onset date. Tr. 20, Finding 2.[2]  At step two, the ALJ found that plaintiff's

affective disorder/schizophrenia was a medically determinable severe impairment. Tr. 21,

Finding 2. The ALJ found that plaintiff's substance abuse, cirrhosis, obesity, heart problems, and

tendinitis were non-severe impairments. Tr. 21. After considering plaintiff's severe and non-

severe impairments, the ALJ determined that plaintiff did not have an impairment or combination

of impairments that meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P,

Appendix 1. Tr. 22, Finding 3.

The ALJ then determined that plaintiff had the RFC to perform the full range of work at

all exertional levels, but with the non-exertional limitation that she can only have occasional

contact with coworkers. Tr. 24, Finding 4. The ALJ also restricted plaintiff to no public contact

and only simple, repetitive tasks. *Id.*

Based on plaintiff's RFC and testimony from the VE, the ALJ found that plaintiff was

incapable of performing her past relevant work. Tr. 30, Finding 5. However, the ALJ found that

plaintiff could perform other work existing in significant numbers in the national economy, such

as a night cleaner and circuit board assembler. Tr. 31, Finding 9. Therefore, the ALJ concluded

that plaintiff was not disabled. The Appeals Council denied plaintiff's request for administrative

---

[2] "Tr." refers to the Transcript of the Administrative Record.

review, making the ALJ's decision the final decision of the Commissioner. Plaintiff

subsequently initiated this action seeking judicial review.

## DISCUSSION

Plaintiff asserts that the ALJ erred at steps four and five of the sequential analysis by

rejecting the opinions of plaintiff's therapists and a non-examining physician, and improperly

discrediting plaintiff's testimony. Plaintiff contends that these errors resulted in an incomplete

RFC and deficient questioning of the VE. For the following reasons, this court agrees.

### 1.    Medical opinion evidence

Plaintiff asserts that the ALJ improperly rejected medical opinion evidence in this case.

Where a treating or examining physician's opinion is not contradicted by another doctor's

opinion, the ALJ may reject it only by stating clear and convincing reasons supported by

substantial evidence in the record. *Regennitter v. Comm'r. of Soc. Sec. Admin.*, 166 F.3d 1294,

1298-99 (9th Cir. 1999); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating

physician's opinion is contradicted by another doctor, it can be rejected for specific and legitimate

reasons supported by substantial evidence in the record. *Id.* In general, less weight should be

given to the opinion of a non-examining source than to an examining or treating source. *Hill v.*

*Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012) (citation omitted). Therefore, the opinion of a non-

examining physician cannot by itself constitute substantial evidence that justifies an ALJ's

rejection of a treating physician's opinion. *Lester*, 81 F.3d at 831.

### A.    Miller Garrison, Ph.D.

An independent psychologist, Dr. Garrison, appeared at plaintiff's hearing and provided

his opinions to the ALJ about plaintiff's limitations based on a complete review of her medical

OPINION AND ORDER - 5

records. Doctor Garrison never examined or treated plaintiff. Although the ALJ explained that

he gave "significant weight" to Dr. Garrison's opinion, plaintiff contends that the ALJ improperly

dismissed Dr. Garrison's full assessment of plaintiff's limitations. Defendant responds that the

ALJ incorporated all of Dr. Garrison's limitations into plaintiff's RFC.

 During the hearing, Dr. Garrison testified that based upon his review of plaintiff's medical

records, he believed that plaintiff suffered from schizoaffective disorder or bipolar disorder. Tr.

62. He noted good performance of daily activities and generally high Global Assessment of

Functioning (GAF) scores, except for one recent GAF score of 50, which indicates serious

symptoms. Tr. 62-63, 69. He opined that plaintiff had mild restrictions in daily activities,

moderate restrictions in social functioning,[3] and marked or moderate to marked restrictions in

concentration, persistence, and pace. Tr. 64. He stated that plaintiff should have no contact with

the public and occasional co-worker contact. Tr. 65. As far as plaintiff's difficulties with

concentration, persistence, and pace, Dr. Garrison explained that he was uncertain about her

limitations because the record contained no diagnosis, testing, or evaluations relating to these

issues, even though plaintiff had received medication for attention deficit disorder. Tr. 65. All

of these limitations are consistent with plaintiff's RFC that she have no public contact, only

occasional contact with coworkers, and only perform simple, repetitive tasks.

 The primary point of contention is Dr. Garrison's comment that plaintiff is fairly sensitive

to criticism and would need a "special supervisor and supportive kind of co-worker

---

 [3] Doctor Garrison initially stated that he believed plaintiff had a moderate to marked
restriction in social functioning, but later assessed only moderate restrictions in response to the
ALJ's questioning. Tr. 63-64

OPINION AND ORDER - 6

environment." Tr. 65. Doctor Garrison later explained that he meant that plaintiff would interact better with a supervisor who was understanding of her mood swings. Tr. 68. Plaintiff contends that Dr. Garrison's reference to a "special supervisor" constitutes a functional limitation that should have been included in plaintiff's RFC. On examination by the ALJ, however, Dr. Garrison agreed that a limitation of only occasional co-worker contact would be an appropriate limitation for plaintiff's perceived difficulties. Tr. 65. On this record, the restrictions in plaintiff's RFC adequately provided for the limitations identified by Dr. Garrison, so the ALJ was not required to state reasons for rejecting the opinion. *See Turner v. Comm'r*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (holding that the ALJ had incorporated the doctor's conclusions into the claimant's RFC). Accordingly, the court finds no error.

### B.    Plaintiff's therapists

The parties agree that plaintiff's therapists, Bryan Olds, M.A. and Michael Flynn, MS QMHP, are not considered "acceptable medical sources" under 20 C.F.R. § 404.1513(a). Instead, they are considered "other sources" under 20 C.F.R. § 404.1513(d), and their testimony may be disregarded only if the ALJ provides "reasons germane to each witness for doing so." *Turner*, 613 F.3d at 1223–24 (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)).

Opinions from other sources should be evaluated based on the nature and extent of the source's relationship with the claimant, the source's expertise in relation to the claimant's impairments, whether the opinion is consistent with other evidence, whether the opinion is supported by the relevant evidence, how well the source explains the opinion, and any other relevant factors. SSR 06-03p at *4-5. Information from other sources may "provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.* at

*2. In general, an ALJ is entitled to give greater weight to opinions from "acceptable medical sources" than other sources. SSR 06–03p at *2. After evaluating the factors for weighing opinion evidence, however, an opinion from an "other" medical source may outweigh the opinion of an "acceptable medical source" when the other source has more frequently seen the claimant, has provided better supporting evidence, and has given a better explanation for his or her opinion. *Id.* at *5.

First of all, plaintiff contends that her therapists' opinions should be given the same weight as acceptable medical source opinions because her therapists worked closely with acceptable medical sources at Lifeworks NW, namely Dr. Lisa Boyd and Dr. Jennifer Bowman. When an "other source" medical provider works in conjunction with and under the supervision of an acceptable medical source, the other source opinion may be considered acceptable medical evidence. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996)).  Here, although some of the therapists' reports were signed by one of the physicians at Lifeworks NW, the record does not establish that the therapists were working under the close supervision of the physicians. Tr. 398, 441. There is also no indication that the physicians' reviewed, approved, or assisted with the functional assessments submitted by Flynn and Olds. Therefore, the ALJ properly treated them as "other source" opinions. That said, plaintiff had a significant treatment relationship with her therapists and their reports were consistent with the physicians' opinions, so the therapists' assessments may be given greater weight than a traditional lay opinion.

In his decision, the ALJ stated that he gave some weight to Flynn's opinion because it was generally consistent with the evidence, but rejected his opinion regarding the side effects plaintiff

suffers from medication because it conflicted with the medical evidence. Tr. 28. The ALJ rejected Olds's opinion because it was inconsistent with the record regarding plaintiff's hygiene and her ability to perform household chores. Tr. 29. Based on the record as a whole, the ALJ's reasons were insufficient to reject the therapists' conclusions. Flynn's observation that plaintiff may suffer side effects is supported by his treatment notes in 2009. Tr. 274; *see also* Tr. 338. Although Olds did not note any side effects in 2011, plaintiff was on different medication at that time. Tr. 472. Additionally, the record showing that plaintiff painted her fingernails, wore dramatic eye makeup, and frequently changed outfits does not necessarily conflict with Olds's opinion that plaintiff has marked difficulties with personal care and maintaining socially appropriate behavior. Tr. 473. Flynn also opined that plaintiff has difficulty attending to her personal care when she is depressed or psychotic. Tr. 177. This is consistent with the record indicating that plaintiff's ability to perform activities of daily living decreases when her symptoms increase. *See, e.g.*, Tr. 320, 334-36.

Defendant also suggests that the ALJ properly dismissed the opinions because plaintiff's symptoms were well controlled by medication. This reason was not cited by the ALJ as part of his rejection of the therapists' opinions, therefore, this court may not rely on it now. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ-not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.") (citations omitted). Moreover, although the record demonstrates some improvement in plaintiff's hallucinations while on medication, she continued to have mood instability and breakthrough hallucination symptoms. Therefore, the ALJ did not

OPINION AND ORDER - 9

provide germane reasons for rejecting plaintiffs' therapists' opinions regarding plaintiff's non-exertional limitations.

### 3.    Plaintiff's credibility

An ALJ need not believe every allegation of disabling pain or functional limitation advanced by a claimant. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The claimant bears the initial burden of producing objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of symptom. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted). If the claimant meets this threshold, and there is no affirmative evidence of malingering, then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.*; *see also* SSR 96-7p ("[The ALJ's decision] must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight.").

An ALJ may weigh a claimant's credibility using ordinary techniques of credibility evaluation, including the claimant's reputation for lying, inadequately explained failures to seek treatment or to follow a prescribed course of treatment, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid. *Tommasetti*, 533 F.3d at 1039 (citing *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)). A claimant's statements cannot be rejected solely because the testimony is viewed as unsubstantiated by the available objective medical evidence. 20 C.F.R. § 404.1529(c)(2). However, if the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

OPINION AND ORDER - 10

The ALJ explained that he considered plaintiff's testimony "with caution" based on her poor work history, history of polysubstance abuse, noncompliance with prescribed treatment, and inconsistencies between her alleged impairments and her reported daily activities. Tr. 30.

Plaintiff's interest in seeking employment after her alleged onset date is not a convincing reason to reject her testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007) (holding that the fact that a claimant tried to work for a short period of time but was unsuccessful because of his impairments, is not a clear and convincing reason to reject the claimant's testimony). Rather, the record indicates that plaintiff often tried to work but left her employment after a few months because of her symptoms, which also explains her spotty work history. *See, e.g.*, Tr. 261, 319.

Second, although an ALJ may reject a claimant's credibility based on inconsistent statements about drug or alcohol abuse, *see Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006) ("[C]onflicting or inconsistent testimony concerning alcohol use can contribute to an adverse credibility finding."); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (holding that a claimant's inconsistent statements about substance abuse is a clear and convincing reason to reject the claimant's testimony), the ALJ in this case appears to have rejected plaintiff's testimony simply because she has a history of substance abuse. The ALJ noted that plaintiff's substance abuse "raises the question of whether she is motivated to improve her functional ability." Tr. 27. The record does not indicate that plaintiff was dishonest or inconsistent regarding her substance abuse issues, therefore it was improper to reject her testimony because she suffers from substance abuse issues. In fact, she often candidly explained to her treatment

providers that she self-medicated with methamphetamine to control her attention deficit

symptoms, which were later treated with prescribed medication. *See, e.g.*, Tr. 447, 449.

Lastly, the record does not support the ALJ's findings that plaintiff failed to comply with

treatment and can perform more activities than her alleged impairments allow. Plaintiff's

therapist noted that plaintiff had a good track record of medication compliance. Tr. 272. The

ALJ cited only two instances when plaintiff was not consistently taking her medication. Tr. 27.

In December 2009, plaintiff reported that she could not take her medication for a short period

when "she couldn't find them." Tr. 335. In April 2010, plaintiff reported that she was not taking

one of her medications because she felt better and "clearer" without it, so her physician decreased

that prescription and increased her other medication doses. Tr. 453. These two instances do not

provide a convincing basis to conclude that plaintiff was noncompliant with her treatment. The

record also indicates that plaintiff's ability to perform daily activities decreases when her

hallucinations and other symptoms increase. Tr. 177-78, 320, 334-36, 472, 474.

### 4.      Incomplete hypothetical

To meet its burden at step five of the sequential analysis, the Commissioner may rely on

the testimony of a VE. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir.

2010) (citation omitted). The ALJ must pose a hypothetical question to a VE that includes all of

the claimant's functional limitations, both physical and mental, that are supported by the record.

*Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002). If the hypothetical fails to take into

account all of the claimant's limitations, it is defective and cannot provide substantial evidence

for the ALJ's ultimate disability determination. *Valentine*, 574 F.3d at 690. Because the ALJ

rejected plaintiff's testimony and her therapists' opinions, the hypothetical questions proposed to

OPINION AND ORDER - 12

the VE did not include all of plaintiff's limitations and is insufficient to meet the Commissioner's burden.

### 5.    Remedy

A remand for further proceedings is unnecessary if the record is fully developed, and it is clear from the record that the ALJ would be required to award benefits. *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). In cases in which an ALJ improperly rejects the claimant's testimony regarding his or her limitations, and the claimant would be disabled if his or her testimony were credited, then that testimony is credited as a matter of law and further proceedings may be unnecessary. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

The VE testified that plaintiff would be precluded from competitive employment if she was absent from work more than two days per month, had more than two angry outbursts at a supervisor, or a marked limitation in concentration, persistence, and pace. Tr. 74-75. If therapist Olds's opinion is properly credited regarding plaintiff's likelihood of missing more than two days of work per month and her marked limitation in concentration, persistence, and pace, the VE's testimony establishes that plaintiff would be precluded from employment. The record makes clear that plaintiff cannot perform any SGA that exists in the national economy, and the case need not be returned to the ALJ for further proceedings. *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).

## CONCLUSION

Given the foregoing, the record is fully developed and there are no outstanding issues in this matter that require resolution. After giving the evidence in the record the effect required by law, this court finds that plaintiff is disabled under the Act. The final decision of the

OPINION AND ORDER - 13

Commissioner is reversed, and this case is remanded to the Commissioner for the proper

calculation and award of SSI on behalf of plaintiff Margarita Delgado.

IT IS SO ORDERED.

DATED this _28_ day of February, 2013.

_____
Ancer L. Haggerty
United States District Judge

OPINION AND ORDER - 14